## Commonwealth ex rel. Fetzer v. Nyman.

*N. B. Spangler* and *Ivan Walker*, for plaintiffs.

*S. D. Gettig* and *John J. Bower*, for defendant.

Fleming, P. J., April 23, 1930.—This is an action of *quo warranto* to try the right of the defendant to hold the office of school tax collector in Curtin Township, Centre County. The matter was tried before a jury, at which trial the court gave binding instructions for the plaintiff. The matter is now before us on defendant's motion for a new trial.

It appears that prior to Aug. 10, 1926, John A. Mann was the duly elected and qualified collector of taxes in Curtin Township, and that on said date Mr. Mann resigned by reason of ill health. On or about Aug. 13, 1926, the late Judge Keller, under a misapprehension of his authority, named the relator as tax collector for Curtin Township to succeed John A. Mann, resigned. The relator forthwith executed and filed his bond with the county commissioners after the court had approved the same. Subsequently it was discovered that an error had been made and that the power of appointment was in the county commissioners and not in the court, whereupon the county

commissioners, at a regular meeting of their board, held Aug. 24, 1926, appointed the relator and a new bond was presented by him to the commissioners, which was duly approved by the court and filed. The relator then informed the school board of his appointment by the commissioners, and Mr. Confer, treasurer of the school board, informed the relator of the amount of bond which would be required by the school board, gave him instructions that The First National Bank of Bellefonte, Pa., was their designated depository, and further informed him that a surety bond would be required. There is also evidence to show that the school district took the county duplicate, which was in relator's possession, and after some time returned it to him with the several items of school taxes inserted therein.

The relator, within a reasonable time, made application to a responsible surety company for a bond. On Sept. 27, 1926, relator delivered the surety bond to S. L. Shortledge, secretary of the board, and Mr. Shortledge declined to receive it and informed the relator that the school board had appointed another collector, the defendant. The relator then brought the bond to his attorney in Bellefonte and the attorney mailed such bond to S. L. Shortledge, secretary of the board. There is no evidence that such bond was ever returned to the relator or his attorney. Mr. Shortledge testified that he had received such bond in a letter from relator's attorney and that he had given it to Mr. Heverly, the president of the school board. Mr. Heverly testified that he had brought the bond to Bellefonte and had given it to Judge Furst, the attorney for the school district. Judge Furst was not called and there is no evidence to show that such bond was returned to the relator or his attorney.

There was offered in evidence the minute of the meeting of the board held on Sept. 20, 1926, as follows:

September 20, 1926.

"Meeting held at Orviston school house with the following members present: George Heverly, John Heverly, Harry M. Herr and S. L. Shortledge, to decide on a tax collector as Mr. Fetzer has not filed his bond yet, it being fifteen days and more.

"On motion made by Harry M. Herr and seconded by Louis Heverly, we appoint Joseph Nyman to collect our school taxes.

"On motion made by S. L. Shortledge and seconded by John Heverly we adjourned."

It was further testified that the above minute was the only minute found anywhere in the records of the school district pertaining to the collection of school taxes in Curtin Township subsequent to the resignation of John A. Mann. We must infer, therefore, that no notice was given to the relator to file his bond within fifteen days from a given date.

We regret to find this muddled condition of school affairs in Curtin Township. When school directors disagree and allow themselves to become at such extreme odds with any of those charged with the administration of school affairs it is the youth of the community who suffer. We have been informed that both the relator and the defendant are now out of office and that another has since been elected as tax collector and is duly and properly functioning. This is well for the good of this township. There appears, therefore, to be no good purpose to be served herein other than to release moneys refused to be accepted by the school board from the relator and to determine costs and to define the indirect liability of relator's surety in connection with this matter.

The right of the school district to choose its own collector upon the resignation of Mr. Mann and the appointment of the relator by the county commissioners was clearly held in Black v. Duquesne Borough School District, 239

Pa. 96, in an interpretation of the powers vested by section 547 of the School Code [of May 18, 1911, P. L. 309]. In other words, the school board could accept the relator as its school tax collector or could name any other person whom they might select.

While it appears that the minutes of the school board show no corporate action accepting the relator as their school tax collector, the testimony, at the trial, was uncontradicted that the relator advised the board of his appointment by the commissioners; that he was told what the amount of his bond as school tax collector would be; that he was advised as to where the tax money was to be deposited; that he was informed that he must secure a surety bond; and that the items of school taxes were entered into his duplicate and delivered to him by the board. There is no evidence that the relator was slothful or delinquent in procuring the required bond. Nor is there any evidence that he had been advised by the board that they were tired waiting and would elect another unless such bond was filed forthwith. The only item of authority wanting was the formal warrant, but there is so much informality present in the instant case that it is reasonable to suppose that the only reason a warrant was given to the defendant was that a printed form thereof was contained in the separate duplicate which remained in the board's possession.

Section 550 of the School Code provides as follows:

"Section 550. Every person appointed or elected collector of school taxes in any school district of the second, third or fourth class in this Commonwealth, in addition to any bonds that he may now be required by law to give, and before receiving his tax duplicate and warrant to collect said school taxes, shall furnish to the school district a proper bond, in an amount to be fixed by the board of school directors, with such surety or sureties as it may approve, conditioned upon the faithful performance of his duties as such tax collector. In case any person elected or appointed tax collector shall fail to furnish a proper bond within fifteen days after his appointment, *or notice so to do*, then, in any such case, the board of school directors shall appoint another suitable person as collector of the school taxes in said district in his place and stead, who, upon giving the proper bond required by the provisions of this act, shall be the duly authorized person to collect the school taxes in said district for the ensuing school year."

It is not denied that relator delivered a bond to the school district and that such bond has never been returned to him. Such failure to return must be construed as an implied acceptance. Nor is there any evidence to show when the period of fifteen days in which relator was obliged to have failed to file such bond began. The school district was empowered to appoint a collector at any time after Aug. 10, 1926, the date of Mr. Mann's resignation. That they had named the relator is evident by implication from the minutes of Sept. 20, 1926, wherein it is stated "Mr. Fetzer has not filed his bond yet, it being fifteen days and more." But when did they select the relator? This is material in determining the validity of their action and the consequent right of the defendant to hold office.

That the provision of the School Code, section 550, was intended to compel tax collectors to use due diligence in entering their bonds is evident. Fifteen days may be a reasonable time under most conditions, but when a tax collector is required to travel from remote parts and to meet with the delays incident to failure to find the agent for the surety at home, as well as to await the forwarding of an application to distant points, and also to undergo the delays incident to the red tape exercised in such distant points, it should be the ques-

tion as to whether such officer has acted with due diligence which should control and not the arbitrary calculation of passing days. Further, there is no evidence that the school board gave the relator any notice of their intention to declare a vacancy. Nor does the minute showing the appointment of defendant disclose whether such meeting was a regular or special meeting, and, if a special meeting, whether or not a proper notice was given. The minute clearly violates section 403 of the School Code, requiring a record showing how each member voted. Further, we find "Louis Heverly" seconding the motion for the appointment of the defendant, while the minute fails to show the presence of "Louis Heverly" at the meeting.

In conclusion, we find the relator to have duly notified the school district of his appointment; by implication, from the minute of Sept. 20, 1926, we find that relator had been appointed tax collector by the board; we find him advised as to the amount and kind of bond to be given and as to the designated depository; we find a duplicate delivered to him before bond furnished, which, according to the provisions of the act, would imply a waiver of the arbitrary fifteen-day period; we find that relator obtained the kind of bond requested with the designated penal sum and delivered it to the school district, and that such bond was never returned; we find a failure to properly elect the defendant.

Under all these facts, we see no reason for a new trial. We have confined our discussion to the reason attacking our direction of a verdict for the plaintiff, being of the opinion that it is the only reason meriting consideration here.

And now, April 23, 1930, a new trial is refused and judgment is directed to be entered upon the verdict.